UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

**IN RE: Stephen S. Meredith, CPA, P.C.**          Case No. 03-37256-DOT
    Chapter 7 Debtor

**Roy M. Terry, Jr.**, Trustee for the bankruptcy
estate of Stephen S. Meredith, CPA, P.C.

    Plaintiff

v.                                                  Adv. Proc. No. 05-03050-DOT

**Darlene S. Meredith,**

**Meredith Financial Group, Inc., and**

**Stephen S. Meredith, CPA,
PLLC,** Default Judgment entered 9/9/2005

    Defendants

## AMENDED MEMORANDUM OPINION

Pursuant to the court's granting of defendant Darlene Meredith's motion to reconsider, this opinion amends the memorandum opinion issued on September 29, 2006, to revise the Court's ruling with respect to the trustee's claim against Darlene Meredith under 11 U.S.C. § 550.

In this adversary proceeding, Plaintiff Roy M. Terry, Jr., trustee for the bankruptcy estate of Stephen S. Meredith, CPA, P.C., seeks judgment against defendants Darlene S. Meredith, Meredith Financial Group, Inc., and Stephen S. Meredith, CPA, PLLC, under eight counts as outlined below. A default judgment was entered against defendant Stephen S. Meredith, CPA, PLLC. For reasons outlined below, on all counts set forth in the complaint, the Court finds in favor of the trustee with respect to defendant Meredith Financial Group but against the trustee with respect to Darlene Meredith.

1

Procedural history

This adversary proceeding arises from an involuntary chapter 7 bankruptcy case that was filed against debtor Stephen S. Meredith, CPA, P.C., on July 25, 2003. The order for relief was entered in that case on September 3, 2003, and Roy M. Terry, Jr., was appointed trustee. This adversary proceeding was initiated by the trustee on April 28, 2005. Defendants Darlene Meredith and Meredith Financial Group, Inc., then filed a motion for withdrawal of the reference of the case to the bankruptcy court. That motion was denied by the district court on August 19, 2005, which remanded the case to the bankruptcy court.[1] On September 7, 2005, this Court granted a default judgment against defendant Stephen S. Meredith, CPA, PLLC, and that judgment was entered on September 9, 2005.

Prior to trial, the parties entered into a stipulation of facts and into a stipulation of dismissal of counts VII and VIII of the complaint. The remaining counts against defendants Darlene Meredith and Meredith Financial Group were:

> I. A request that the Court i) determine that debtor, Meredith Financial Group and Stephen S. Meredith, CPA, PLLC, are all alter egos of each other, or ii) hold that Meredith Financial Group and Stephen S. Meredith, CPA, PLLC, are accountable for the debts owed to the creditors of debtor, or iii) deem that debtor, Meredith Financial Group and Stephen S. Meredith, PLLC, are in fact a single business entity and as such are jointly and severally liable for debtor's debts.
> II. A request that the Court order that the corporate veil of Meredith Financial Group be pierced and that Darlene Meredith be held responsible for the debts and liabilities of Meredith Financial Group.
> III. A request that the Court find Meredith Financial Group and Stephen S. Meredith, CPA, PLLC, are liable for the debts of debtor on the grounds that they are corporate successors to debtor.

---

[1] Darlene Meredith and Meredith Financial had demanded a jury trial in their amended answer to the trustee's complaint but subsequently waived that request.

    IV. A request that the transfers to Darlene Meredith and Meredith Financial Group be avoided as fraudulent transfers pursuant to § 548 of the Bankruptcy Code.
    V. A request that Darlene Meredith and Meredith Financial Group account for and turn over to the trustee any assets and funds of the estate that they have utilized, pursuant to §§ 541 and 542 of the Bankruptcy Code.
    VI. A request that all post-petition transfers to Darlene Meredith and Meredith Financial Group from debtor be avoided and the property that was the subject of the transfer be returned to the estate, pursuant to §§ 549 and 550 of the Bankruptcy Code.

A motion for summary judgment made by defendants Darlene Meredith and Meredith Financial Group was denied, and trial was held. The Court thereafter heard oral closing argument at a separately scheduled time, final briefs were submitted, and the Court took the matter under advisement.

**FACTS**

Debtor was an accounting business of which Steven S. Meredith individually was the sole shareholder, officer, and director. Debtor's primary business consisted of tax and accounting services. In 2000, debtor's revenues totaled $140,178.00; in 2001, revenues were $136,409.00; in 2002, revenues were $138,752.99. In 2002, fees from tax and accounting services comprised 96% of debtor's revenues.

Between them, Stephen Meredith individually and his wife Darlene Meredith[2] operated several different small businesses. All of the businesses were housed in the same office space located in Richmond, Virginia. These businesses included debtor, Mortgage Resource Group, Inc., a licensed mortgage brokerage firm, and South East Realty Partners, to name but a few. The office space was leased in debtor's name. Although the businesses were organized as separate entities, there was considerable overlap among

---

[2] The Merediths were married in September of 2001. In the fall of 2003, Darlene Meredith commenced divorce proceedings against Stephen Meredith.

3

them. For example, Mortgage Resource Group had an employee leasing arrangement with debtor under which payroll, health insurance, retirement plans, child daycare and other expenses of Mortgage Resource Group were paid by debtor and then reimbursed by Mortgage Resource Group. Steven Meredith was the sole shareholder of this corporation.

On December 18, 2002, a jury for the Circuit Court for the County of Henrico, Virginia, returned a $250,000.00 verdict in favor of Nadine Blackford and R & N Accounting Services, Inc., against debtor and Steven Meredith individually. The verdict was subsequently reduced by the circuit court to $200,000.00 and entered upon its docket on April 8, 2003.

On December 31, 2002, less than two weeks after the jury verdict was delivered, Stephen Meredith and his wife Darlene Meredith formed MFG with Darlene Meredith being president and sole shareholder. In addition, on December 31, 2002, Stephen Meredith transferred to Darlene Meredith all of his stock in Mortgage Resource Group, Inc.

MFG was formed to enable Stephen Meredith to continue to work after the verdict was returned against him and debtor in the Henrico Circuit Court.[3] In addition, she testified that another factor motivating the formation of MFG was to enable her to undertake projects that she could not undertake through Mortgage Resource Group because of the tight regulatory scheme of the mortgage brokerage industry. No compelling evidence of other enterprises was produced.

---

[3] Darlene Meredith testified that another factor motivating the formation of Meredith Financial Group was to enable her to undertake projects that she could not undertake through Mortgage Resource Group because of the tight regulatory scheme of the mortgage brokerage industry. The Court is not persuaded that embarking on other pursuits was a motivating factor in the formation of MFG.

4

In addition to the creation of MFG and the transfer of ownership of Mortgage Resource Group to Darlene Meredith, on December 31, 2002, Darlene Meredith purchased all of the physical assets of debtor for the sum of $7,500.00. She then assigned those assets to South East Realty Partners, LP, a partnership she operated with her son, which in turn leased the assets to MFG for $3,900.00 per quarter. Meredith Financial continued to operate from the same location as debtor, used the same office furniture and computers as debtor, had the same telephone number as debtor, and used debtor's files. From the time of its formation, MFG performed the same types of services that debtor had performed before the jury verdict was delivered. Its 2003 profit and loss statement shows that it derived its revenue from the same sources as debtor. In the first seven months of 2003, MFG derived ninety percent of its revenue from accounting and tax services with a minimal amount of trust and estate work. In addition, in the first seven months of 2003, the monthly income of MFG was approximately equivalent to that previously earned by debtor. After the creation of MFG, Stephen Meredith continued his accounting practice there. MFG had no business purpose other than continuing the tax and accounting services that had previously been provided by debtor.

The value of the accounting practice transferred to MFG was not proven by the independent valuation of a disinterested expert. However, Stephen Meredith had attempted to sell the business several times, thus suggesting that there was in fact value in the practice. He testified that the value of the practice as a going concern was a multiple of one times the annual revenue, which was $138,752.99 in 2002. In the absence of other evidence, the Court finds $138,752.99 as the value of the accounting practice of debtor.

Defendant Stephen S. Meredith, CPA, PLLC, was formed in July 2003, the same month that the involuntary bankruptcy petition was filed against debtor. Default judgment

5

has been issued against this entity as to all counts. Other findings of fact are contained in the conclusions of law below.

## CONCLUSIONS OF LAW

Count I. The trustee requests that the Court determine that debtor, MFG and the PLLC are all alter egos of each other. The evidence is overwhelming that these entities are in fact alter egos of each other. Stephen Meredith moved his accounting practice from debtor to MFG and then to the PLLC. To his clients, nothing at all changed regardless of the corporate entity for whom Stephen Meredith was working. This alone would not require the conclusion that the entities were alter egos. However, in this case, the work being done by Stephen Meredith did not vary, the address and phone numbers did not change, and there is a paucity of evidence that other work being done changed the character of the business.

This Court, in Huennekens v. Gilcom Corp. (In re SunSport, Inc.), 260 B.R. 88 (Bankr. E.D. Va. 2000), aff'd, 43 Fed. Appx 562 (4th Cir. 2002), found that in effect a request for a finding of alter egos is "[i]n essence, . . . asking the court to ignore any separateness or distinction between" the corporate defendants. Id. at 107. Citing the standard definition of the alter ego doctrine as "when the corporation is the mere instrumentality or business conduit of another corporation or person," 1 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Private Corporations § 41.10 (perm. ed. rev. vol. 1999), the court stated that under such a circumstance, the corporate form might be disregarded. 88 B.R. at 107.

Viewing the facts of this case, the Court concludes that these three entities are in fact alter egos. Because a default judgment has already been entered against the PLLC, the Court will address only the relationship between debtor and MFG. As noted above,

6

there were no substantial changes in the accounting business carried on by Stephen Meredith, and in fact Darlene Meredith testified that the corporation was formed for the purpose of giving him a place in which he could have employment. Despite her testimony that MFG was to have a different focus from debtor, the fact remains that the business derived the bulk of its revenues from Stephen Meredith's accounting clients, whose payments for services rendered by debtor were accepted and used by MFG. In addition, Stephen Meredith still maintained control of the business, and in fact, he entertained discussions of selling his accounting practice during the period while he was employed by MFG. This is certainly a strong indication that he in fact controlled MFG and that it operated as a successor entity and alter ego of debtor.

      While the Merediths did not operate debtor and MFG in such a manner that the corporate identities were totally obliterated, it is apparent from the record that the income stream generated from Stephen Meredith's accounting practice was the primary income for both debtor and MFG. In addition, there does not appear to have been careful attention paid to the allocation of income between services provided by MFG and debtor. This, coupled with the level of control that Stephen Meredith exercised over the businesses, leads to the conclusion that the two entities may not be treated distinctly.

      Count II. The trustee has requested that the Court pierce the corporate veil of MFG and hold Darlene Meredith responsible for the debts and liabilities of MFG. The test for piercing the corporate veil has been set forth by the Fourth Circuit in its affirmance of SunSport:

> The Supreme Court of Virginia has made clear that the imposition of liability on individual shareholders for the financial obligations of their corporation is an extraordinary event. O'Hazza v. Executive Credit Corp., 246 Va. 111, 431 S.E.2d 318, 320 ( Va. 1993) (quoting Cheatle v. Rudd's Swimming Pool Supply Co., Inc., 234 Va. 207, 360 S.E.2d 828, 831 (Va. 1987)) ("Ignoring the separate

7

existence of a corporation and imposing personal liability on shareholders for debts of the corporation is an extraordinary act to be taken 'only when necessary to promote justice.'"). Indeed, a party 'seek[ing] to disregard the corporate entity must show that the shareholder sought to be held personally liable has controlled or used the corporation to evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage. Id. (citing Lewis Trucking Corp. v. Commonwealth, 207 Va. 23, 147 S.E.2d 747, 753 (Va. 1966)). Moreover, a court ruling which pierces the corporate veil, and which subjects an individual shareholder to personal liability for corporate obligations, is only "justified when the unity of interest and ownership is such that the separate personalities of the corporation and the individual no longer exist." Id. at 320-21 (citing Lewis Trucking, 147 S.E.2d at 753-54).

Huennekens v. Reczek, 43 Fed. Appx. 562, 566 (4th Cir., 2002).

In this case, there is not sufficient evidence to hold Darlene Meredith liable for the debts of MFG under the theory of piercing the corporate veil. There has been no evidence that she commingled her personal assets with the assets of MFG or that she disregarded the corporate form. While she may have derived some benefit from the corporation in terms of salary, there is no indication that the corporate formalities were disregarded. The separate personalities of the corporation and the individual were not merged.

The trustee argues that the creation of MFG constituted the perpetration of a fraud because assets were transferred into MFG at the expense of debtor's creditors. However, the evidence required to prove fraud on the part of Darlene Meredith is simply lacking. While it is true that she was the shareholder of MFG, there is no evidence that she in fact knowingly participated in a fraudulent scheme. Rather, she testified that she was merely seeking to provide her husband a place to practice his profession. From the record, the Court finds that while she participated in the creation of MFG, Stephen Meredith took the lead in the formation of the corporation.

Darlene Meredith testified that she knew months into the marriage that it would not last. She had no reason to think that she would benefit in the long term by providing her husband with a forum within which to practice accounting. There is insufficient evidence to show that she was motivated by a desire to hide assets from her husband's creditors.

Having found no proof of fraud on the part of Darlene Meredith, the Court cannot disregard the corporate identity of MFG by holding her responsible for the obligations of MFG.

Count III. The trustee has requested that the Court find that MFG is a corporate successor to debtor. As previously outlined, Stephen Meredith moved his accounting practice from debtor to MFG and then to the PLLC. To his clients, nothing at all changed regardless of the corporate entity for whom Stephen Meredith was working. This alone would not require the conclusion that the entities were corporate successors. However, in this case, the work being done by Stephen Meredith did not vary, the address and phone numbers did not change, and there is a paucity of evidence that other work being done changed the character of the business.

The guidelines for determining that a business is a successor corporation are found in Kaiser Foundation Health Plan v. Clary & Moore, P.C., 123 F.3d 201 (4th Cir. 1997). The Fourth Circuit explained that:

> Although there is no absolute legal standard for determining whether one corporation is in fact a mere continuation of another, courts in Virginia adhere to the "traditional view" and have identified numerous factors which can help in the determination. The most critical element in proving a continuation is showing the same ownership of the two companies, a "common identity of the officers, directors, and stockholders in the selling and purchasing corporations." It is also relevant whether the new corporation continues in the same business as its predecessor, although courts point out that this is less important than identity of ownership. In addition, when transfer of the selling company's assets was done

>for less than adequate consideration, a purchasing corporation is likely to be a mere continuation. The Virginia Supreme Court has also emphasized that a new corporation is not a mere continuation when the purchase of the seller's assets occurred in a bona fide, arm's-length transaction. Additional factors include whether two corporations or only one remain after the transactions at issue and whether the new company continues in the old offices with the same telephone number and address as the old company.

123 F.2d at 206 (citations omitted).

This Court in SunSport considered whether a corporation could be considered a successor corporation under the Kaiser analysis. First, the Court noted that there must be substantial overlap in the ownership, officers and directors of the corporations. 260 B.R. at 105. In debtor's case, there is clearly identity of ownership. Although Darlene Meredith owned the stock in MFG, Stephen Meredith continued to be the driving force behind the business. The books and records continued to be maintained by him, and the testimony of Darlene Meredith made it clear that while she was the nominal shareholder, the actual knowledge of the business and its management was in the sole custody of Stephen Meredith.

A second factor under Kaiser, whether the successor corporation continues in the same business as the first, Id., is clearly satisfied in this case. A third factor, "the way in which the assets of the predecessor were transferred," Id. at 106, is also clearly satisfied. There was no arm's-length transaction, no appraisal of the business, no true bill of sale. The only capitalization of the business was a $800.00 payment for Darlene Meredith's equity share, a $200.00 deposit into the initial bank account and a $2,750.00 check made payable to debtor which was signed over to MFG by Stephen Meredith. That check was made payable to debtor on December 30, 2002 – one day before MFG had even been formed. This is strong evidence of a corporate successor.

The fourth factor is whether after the creation of the successor corporation, only the successor corporation remains. Id. In this case, debtor did not survive the creation of MFG. Under the circumstances of this case, this is strong evidence that the business of debtor simply continued in MFG.

In light of the above analysis, there can be no other conclusion than that MFG was a mere continuation of debtor.

Count IV – the trustee requests that the transfers to Darlene Meredith and MFG be determined to be fraudulent under § 548 of the Bankruptcy Code. That section provides that:

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
> 
> (A) made such transfer or incurred such obligation with the intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> 
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> 
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
> 
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C. § 548(a)(1).

The badges of fraud are listed in Hyman v. Porter (In re Porter), 37 B.R. 56 (Bankr. E.D. Va.1984). They are:

(1) Retention of an interest in the transferred property by the transferor;
(2) Transfer between family members for allegedly antecedent debt;
(3) Pursuit of the transferor or threat of litigation by his creditors at the time of transfer;

11

   (4) Lack of or gross inadequacy of consideration for the conveyance;
   (5) Retention or possession of the property by the transferor; and
   (6) Fraudulent incurrence of indebtedness after the conveyance.

Id. at 63.

  This case not only contains the classic badges of fraud with respect to MFG, it contains them in the extreme. (1) Retention of an interest in the accounting business is clear in that Stephen Meredith was in fact negotiating to sell the accounting business when it was housed in MFG. (2) The transfer of the accounting business was not technically between family members, since the transfer was made to MFG, but Darlene Meredith's role as shareholder and officer and director clearly facilitated the transfer to MFG. The transfer was not for allegedly antecedent debt, but for the inconsequential sum of $800.00. In addition, Darlene Meredith purchased the physical assets of the accounting practice for the sum of $7,500.00 and then entered into an agreement with MFG to lease them back for $3,900.00 per quarter, well in excess of their actual purchase value. Only two payments were made under this arrangement.

  (3) The threat of litigation against the transferor is present in the suit being pursued by Nadine Blackford. (4) Adequacy of consideration, as noted above, is lacking, the sale of stock having taken place for $800.00. (5) Stephen Meredith retained the accounting practice, as can be seen by the fact that he was engaged in discussions to sell it and by the fact that he alone exercised control over it and in fact subsequently moved it from MFG to the PLLC.

  Those facts show fraudulent intent. The trustee has proven the "intent to hinder, defraud or delay" creditors requirement of § 548 as well as the other requisite elements of § 548. Therefore, the Court finds that the transfer of the assets to MFG was therefore fraudulent.

Darlene Meredith and MFG argue that the value of the business was zero after the $200,000.00 verdict was entered and that therefore nothing of value was transferred to MFG. However, that analysis is faulty. Even if the amount of the jury verdict were subtracted from the income derived the first year, the income would have continued in future years. Simply because the liability to Blackford would vitiate the return to a purchaser the first year, there was still substantial value in the income stream derived from the accounting practice.

With respect to Darlene Meredith, however, the trustee has not shown any actual transfer made to her by debtor. The transfer of the corporate assets was made to MFG and not to her. While it is true that the purchase price was low, the facts show that the assets still remained under the control of Stephen Meredith and MFG and were not transferred to Darlene Meredith. Other than the director's salary, there is scant evidence that Darlene Meredith gained anything from MFG, and she did not gain anything directly from debtor. Therefore, no recovery under § 548 may be made against her.

Count V – The trustee requests that Darlene Meredith and MFG be required to turn over any assets of the estate that they may have received, pursuant to §§ 541 and 542 of the Bankruptcy Code. This is mandated against MFG since the Court has previously determined that MFG succeeded to all of the assets of debtor as a successor corporation or alter ego. Alternatively, the Court has found that MFG obtained its assets as a result of a fraudulent conveyance prohibited by § 548 of the Bankruptcy Code.

With respect to Darlene Meredith, there has not been a finding that she has received any assets of the estate, so recovery against her is impermissible.

Count VI – The trustee has requested that all post-petition transfers to Darlene Meredith and MFG be avoided and that the property be returned to the estate pursuant to

13

§ 549 of the Bankruptcy Code. This relief is warranted against MFG under the facts and circumstances of this case, since MFG was operated after the bankruptcy case was initiated. Any proceeds of that business would arguably be part of the bankruptcy estate. MFG has ceased its operations and does not likely hold assets, but the default judgment against the PLLC makes the recovery requested by the trustee available against it, to the extent that it retains assets derived from debtor under the theories discussed above. Darlene Meredith did not receive a transfer of property from debtor, so recovery from her under § 549 is impermissible.

Section 550 - Finally, at oral argument, the trustee argued that § 550 of the Bankruptcy Code provides recovery against Darlene Meredith under the theory that she was the individual for whose benefit the transfer to MFG was made. Section 550 gives the trustee the ability to recover property from an avoided transaction under §§ 548 and 549:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b) or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from –
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made. . .

11 U.S.C. § 550(a)(1). In this case, the property improperly transferred to MFG was essentially the accounting business and its stream of revenue. Section 550 makes it possible for the trustee to recover assets transferred to Darlene Meredith through MFG, regardless of her intent. Rather, it focuses on the actual fraudulent conveyance into MFG and whether it was made for Darlene Meredith's benefit.

Detailed examination of the requirements of § 550 was undertaken by the court in Baldi v. Lynch (In re McCook Metals, L.L.C.), 319 B.R. 570 (Bankr. N.D. Ill. 2005). In

that case, the court addressed a request by a trustee to recover assets transferred to a limited liability company that was under common ownership with the debtor. The trustee was seeking to recover from the principals of the transferee limited liability company. The court held that in order for the trustee to recover from the principals under § 550, the transferor must have had an intent to benefit the principals. Further, the court held that there must have been some actual benefit to the principals, and that benefit must be quantifiable and accessible to the principals.

In McCook, the court found that because the principals had control of the transferee limited liability company, the assets were accessible to them. In addition, they held a quantifiable equity interest in the limited liability company. However, the court warned that the principals would be liable only to the extent that they actually acquired benefits.

This Court is persuaded by the extensive and logical analysis of the McCook opinion. Applying that analysis in the present case, the result is clear that any quantifiable amounts received from MFG by Darlene Meredith are recoverable by the trustee. Assets were transferred to MFG by debtor; that has been established above. Motivation for the transfer was threefold, to place the assets out of the reach of debtor's judgment creditor, to preserve the income stream from the accounting business, and less obviously, to provide support for Darlene Meredith.

Stephen Meredith's support of Darlene Meredith began at the time of her 2001 marriage to Stephen Meredith. Tax documentation reveals that in 2000, prior to the marriage, Darlene Meredith earned over $80,000.00 from a company that seems to have been unrelated to debtor. By 2002, her earned income was $30,000.00 from debtor. Her 2003 W-2 shows earned income from MFG as $43,500.00. Income from various

15

enterprises whose salaries were paid by debtor was Darlene Meredith's sole source of earned income in 2002 and 2003.

Stephen Meredith used MFG as a "clearinghouse" for salaries for the related companies. The record is not completely clear as to exactly how much, if any, of those payments to Darlene Meredith were attributable to her function as director of MFG. However, there is no convincing proof that those payments were not made to Darlene Meredith for her work in the related companies. In fact, almost all of the payments to her match up to deposits made by Mortgage Resource Group to MFG, which were then treated by MFG as salary for Darlene Meredith. Taxes and other withholdings were deducted, and a salary check was issued to Darlene Meredith from MFG for the work that she had performed for Mortgage Resource Group.

In the memorandum opinion issued September 29, 2006, the Court considered a Form W-2 that was issued to Darlene Meredith from MFG as an indication that there had been a benefit to her from MFG that could be recovered from her under § 550. However, upon a motion for reconsideration by Darlene Meredith, and her explanation that the income that was the subject of the W-2 was income she received from Mortgage Resource Group that was "cleared" through MFG, the Court has reevaluated the evidence. Upon that reevaluation, it appears, as explained above, that there was no quantifiable benefit received by Darlene Meredith from MFG. Darlene Meredith has thus met the criteria for reconsideration under Rule 9023 of the Federal Rules of Bankruptcy Procedure, as set out in the Court's order granting the motion for reconsideration.

The Court notes that in response to the motion to reconsider, the trustee argued that the value of property transferred from debtor to Darlene Meredith was actually the value of the accounting practice itself. However, the rule of McCook is clear that

16

recovery is available under § 550 only to the extent that the transferee actually received benefits. The Court has found as a matter of fact that Darlene Meredith received no quantifiable benefit from debtor's transfer of assets. Therefore, recovery from her is not permissible under § 550 and the rationale set forth in <u>McCook</u>.

## CONCLUSION

The trustee may recover any assets remaining from MFG and the PLLC. This finding is based upon the theory of successor entities. In addition, the transfer of the assets to MFG and subsequently to PLLC was voidable under §§ 548 and 549 of the Bankruptcy Code. This finding is unnecessary to enable the trustee to recover from MFG and the PLLC, but it is a necessary finding if the trustee is to be able to recover from Darlene Meredith any quantifiable amounts transferred by debtor for her benefit. However, there having been no finding of a quantifiable benefit to Darlene Meredith, the trustee may not use § 550 to recover from her.

A separate order will be entered.

SIGNED: _____

                                 /s/ Douglas O. Tice Jr.
                                DOUGLAS O. TICE JR.
                                CHIEF JUDGE
                                UNITED STATES BANKRUPTCY COURT

Copies:

Kaufman & Canoles
Jeffrey L. Marks. Esq.
Kevin D. Holden, Esq.
Suite 700
2101 Parks Ave.
Virginia Beach, VA 23451
Counsel for Darlene S. Meredith and Meredith Financial Group, Inc.

Kutak Rock L.L.P.
Peter J. Barrett, Esq.
Loc Pfeiffer, Esq.
1111 East Main St.
Suite 800
Richmond, VA  23219-3500
Counsel for the trustee

Roy M. Terry, Jr., trustee
P.O. Box 2188
Richmond, VA  23218-2188

W. Clarkson McDow, Jr.
Robert B. Van Arsdale
Office of the U. S. Trustee
600 E. Main St., Suite 301
Richmond, VA 23219